TOTEM MARINE TUG & BARGE, INC.,
Plaintiff-Appellant,

v.

NORTH AMERICAN TOWING, INC.,
Defendant-Appellee.

No. 77–2298.

United States Court of Appeals,
Fifth Circuit.

Nov. 27, 1979.

Joseph V. Ferguson, II, Joseph V. Ferguson, III, New Orleans, La., Roy Morrow Bell, San Diego, Cal., for plaintiff-appellant.

Jerald P. Block, Thibodaux, La., for defendant-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

North American Towing, Inc. (North American) applied for confirmation of an arbitration award against Totem Marine Tug and Barge, Inc. (Totem), which sought to vacate or modify the award. The arbitrators' decision held that Totem had breached the charter agreement between the parties and awarded North American damages of $74,568.08. The district court confirmed the award. 429 F.Supp. 452 (E.D. La.1977). Because of irregularities in the conduct of the arbitration hearing which materially prejudiced Totem, we reverse.

## FACTS

On June 19, 1975, Totem and North American entered a six month time charter agreement for the M/V KIRT CHOUEST owned by North American. The vessel was

to be delivered to Totem at Galliano, Louisiana, and to be returned there or to any other mutually agreed port at the expiration of the charter term. Totem was to use the vessel to tow a loaded barge from Houston through the Panama Canal and into the Pacific, to Los Angeles and then Seattle, and finally to Anchorage, Alaska. On October 19, 1975, Totem terminated the charter allegedly because of excessive repairs and delays caused by the vessel. North American requested arbitration. Totem responded by seeking a clarification of North American's claim. North American provided an itemized statement of the claim, the first and largest item being the "Specific contract amount for returning vessel—$45,-000.00" (R. at 29). Totem counterclaimed alleging that the vessel was unfit for the purposes of the charter and that the vessel had been redelivered at a mutually agreed port: Anchorage.

Although North American never requested damages for charter hire, the contract amount for use of the vessel between October 19 (the date of Totem's alleged breach) and December 19 (the end of the charter term), the arbitration panel awarded it nonetheless. The panel stated: "North American erroneously asked only for its return expense (plus some miscellaneous accounting items) in damages. The proper measure of North American's damages was the balance of charter hire due under the charter less the earnings of the vessel during that period." (R. at 118). Totem contends that by this action the arbitrators exceeded their powers and awarded on a matter not submitted to them, thereby impairing the award under the provisions of 9 U.S.C.A. § 10(d) and § 11(b) (1970).[1]

The panel then computed North American's damages as the charter hire due under the contract from October 19 to December 19, less the earnings of the KIRT CHOUEST during the same time period, plus some miscellaneous expenses. It is undisputed that after the close of the arbitration proceedings, during deliberations, the arbitrators realized that each had a different figure in his notes on the earnings of the KIRT CHOUEST from October to December. The arbitrator appointed by North American then telephoned North American's counsel who supplied the figure which the arbitrators used to complete their computations. Totem was neither notified of this telephone conversation nor given any opportunity to respond to the figure provided by North American. Totem contends that this ex parte communication constituted prejudicial misconduct by the arbitrators in violation of 9 U.S.C.A. § 10(c).

---

1. Title 9, §§ 10 and 11 provide as follows:

§ 10. Same; vacation; grounds; rehearing

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

§ 11. Same; modification or correction; grounds; order

In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.

## UNLAWFUL EXTENSION OF SUBJECT MATTER

Totem contends that the issue of charter hire was never placed in issue in the arbitration proceeding and that an award on that basis denied it due process. North American acknowledges that it never specifically requested damages for charter hire but claims that the matter was naturally intertwined in the general scope of the breach of contract claim.

 An arbitration proceeding is much less formal than a trial in court. "In handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, UAW*, 500 F.2d 921, 923 (2nd Cir. 1974). All parties in an arbitration proceeding are entitled to notice and an opportunity to be heard. *Citizens Bldg. of West Palm Beach, Inc. v. Western Union Tel. Co.*, 120 F.2d 982, 984 (5th Cir. 1941); *Seldner Corp. v. W. R. Grace & Co.*, 22 F.Supp. 388, 391–93 (D.Maryland, 1938). Although arbitrators enjoy a broad grant of authority to fashion remedies (Commercial Arbitration Rules of the American Arbitration Association § 42),[2] arbitrators are restricted to those issues submitted. *Retail Store Employees Union Local 782 v. Sav-on-Groceries*, 508 F.2d 500, 503 (10th Cir. 1975); *Kansas City Luggage and Novelty Workers Union, Local No. 66 v. Neevel Luggage Mfg. Co.*, 325 F.2d 992 (8th Cir. 1964).

 Arbitration is contractual and arbitrators derive their authority from the scope of the contractual agreement. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Gulf and South America Steamship Co., Inc. v. National Maritime Union of America*, 360 F.2d 63, 65 (5th Cir. 1966). The award of an arbitration panel may be vacated where the arbitrators exceed their powers. 9 U.S.C.A. § 10(d) (1970); *e. g., Retail Store Employees Union Local 782 v. Sav-on-Groceries, supra*, 508 F.2d at 502–03; *Delta Lines, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local 85*, 409 F.Supp. 873, 876 (N.D.Calif., 1976).

The arbitration panel exceeded its powers by awarding damages for charter hire to North American. Not only did North American fail to list charter hire in its itemized statement of damages submitted to Totem, but in its brief submitted to the arbitration panel, North American conceded that charter hire was not an issue in the arbitration. Totem prepared and argued a case in which return expenses, and not charter hire, was the main issue. North American originally claimed damages totalling $74,713.63, later amended to a total of $87,047.82, the first and largest item claimed being $45,000.00 for return of the vessel. With the exception of the $45,000 claim for returning the vessel, and a few other very minor exceptions totalling less than $1,000, the arbitration panel fully upheld North American's claim. In place of the $45,000 North American requested for return of the vessel, the arbitrators awarded charter hire totalling $117,440.00, bringing the total damages due North American to $157,887.63, before Totem's offsets and counterclaims. It is anomalous for the arbitration panel to award an unrequested item of damages three times larger than any item claimed by North American and then to hear the panel action supported with an argument that the awarded item was naturally intertwined within the scope of the arbitration.

 In its letter of February 4, 1976, responding to Totem's request for a clarification of the matters to be submitted to arbitration, North American set forth the nature of the dispute and the amount in-

---

**2.** Section 42. SCOPE OF AWARD—

The Arbitrator may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract. The Arbitrator, in his award, shall assess arbitration fees and expenses in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA.

volved by itemizing its damages.[3] Although return expenses were specifically listed, damages for charter hire were not. By awarding charter hire, the arbitrators ignored the arbitral dispute submitted by the parties and dispensed their "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel and Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. 1358.

## EX PARTE COMMUNICATION

After the arbitrators decided to base North American's damages on charter hire instead of the expenses of returning the vessel, it became necessary to determine the earnings of the KIRT CHOUEST between October and December as an offset. Because charter hire had never been placed in issue and the vessel's earnings had arisen only as related to the issue of whether the vessel had been returned to North American at Anchorage, each of the arbitrators had a different figure in his notes and none were confident that he had the correct fig-

ure. Consequently, although the hearings had been closed several days earlier, and despite the fact that the office of Totem's counsel was in the same building in which the arbitrators were deliberating, a long distance call was placed to North American's counsel to ascertain the earnings of the KIRT CHOUEST. The figure supplied by North American's counsel was adopted by the panel although it matched none of their figures. Totem was never notified of the call or given any opportunity to contest the figure supplied.

In clause twenty-four of the charter agreement, Totem and North American incorporated the Commercial Arbitration Rules of the American Arbitration Association for the resolution of any dispute between them.[4] Section thirty of the Arbitration Rules states that "[a]ll evidence shall be taken in the presence of all the parties, except where any of the parties is absent in default or has waived his right to be present."[5] Evidence was received from

---

3. The Commercial Arbitration Rules of the American Arbitration Association provide as follows:

 Section 7. Initiation under an Arbitration Provision in a Contract—
 Arbitration under an arbitration provision in a contract may be initiated in the following manner:
 (a) The initiating party may give notice to the other party which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought. . . .

4. The arbitration clause of the charter agreement provides as follows:

 *Arbitration Clause.* Any controversies or claims between Owner and Charterer arising out of or relating to any provision of the Time Charter Agreement shall be determined under the maritime laws of the United States or the laws of the State of Alaska, whichever is applicable, and shall be referred to arbitration before three commercial persons, at New Orleans, Louisiana, one to be appointed by each of the parties hereto and the third to be selected by mutual agreement of the other two. Their decision or that of any two of them shall be final and may be entered and enforced in any court having jurisdiction therein. The procedural rules, regulations and time schedules of the American Arbitration Association shall be applicable to such arbitration, unless otherwise expressly herein provided.

Any notices provided for herein shall be deemed given at the time of mailing when sent by registered or certified mail addressed to the recipient at the address hereinabove stated.

On the effect of the American Arbitration Association rules, with and without an express agreement of the parties, see *Commercial Solvents Corp. v. Louisiana Liquid F. Co.,* 20 F.R.D. 359, 361 (S.D.N.Y.1957); *Korein v. Rabin,* 29 A.D.2d 351, 355, 287 N.Y.S.2d 975, 979 (App.Div.1968):

 The agreement to arbitrate, as set forth in the demand, expressly provided that 'any controversy or claim . . . shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association.' The parties, therefore, are subject to the procedures established by the rules of the association which, in effect, where incorporated in the demand . . . .

5. Section 30 provides as follows:

 Section 30. EVIDENCE—The parties may offer such evidence as they desire and shall produce such additional evidence as the Arbitrator may deem necessary to an understanding and determination of the dispute. When the Arbitrator is authorized by law to subpoena witnesses or documents, he may do so upon his own initiative or upon the request of any party. The Arbitrator shall be the judge of the relevancy and materiality of

North American's counsel out of Totem's presence when the telephone call was made and the figure given by North American was adopted by the arbitrators as the basis for their computations. Totem neither defaulted nor waived its rights, but instead, timely filed a motion to vacate in district court.[6] The arbitration rules provide specific procedures for the receipt of evidence [7] and the close of hearings,[8] procedures violated by the ex parte communication with North American.

 After the arbitration panel improperly extended the scope of arbitration to include charter hire, the extent of Totem's liability hinged on the determination of the earnings of the KIRT CHOUEST between October and December. The ex parte receipt of evidence bearing on this matter constituted misbehavior by the arbitrators prejudicial to Totem's rights in violation of 9 U.S.C.A. § 10(c); *e. g., Chevron Transport Corp. v. Astro Vencedor Compania Naviera, S. A.,* 300 F.Supp. 179 (S.D.N.Y.1969) (the failure of maritime arbitrators to make the ship's logs in the hand of one party fully and timely available to the other party was considered sufficient grounds for vacating the award where the party could show that he was thereby prejudiced); *Katz v. Uvegi,* 18 Misc.2d 576, 187 N.Y.S.2d 511 (Sup.Ct. 1959), *aff'd,* 11 A.D.2d 773, 205 N.Y.S.2d 972

(App.Div.1960): "Arbitrators cannot conduct ex parte hearings or receive evidence except in the presence of each other and of the parties, unless otherwise stipulated." 18 Misc.2d at 583, 187 N.Y.S.2d at 518.

We vacate the award without prejudice to the resubmission of the dispute between the parties before a new arbitration panel in accordance with the terms of the contract.

REVERSED. AWARD VACATED.

---

the evidence offered and conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the Arbitrators and of all the parties, except where any of the parties is absent in default or has waived his right to be present.

6. Title 9, U.S.C.A. § 12 (1970) allows a party three months to file in district court after an award has been rendered. The award was rendered on June 16, 1976; Totem filed in district court on August 23, 1976.

7. Section 31 provides as follows:

Section 31. EVIDENCE BY AFFIDAVIT AND FILING OF DOCUMENTS—The Arbitrator shall receive and consider the evidence of witnesses by affidavit, but shall give it only such weight as he deems it entitled to after consideration of any objections made to its admission.

All documents not filed with the Arbitrator at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the AAA for transmission to the Arbitrator. All parties shall be afforded opportunity to examine such documents.

8. Section 34 provides as follows:

Section 34. CLOSING OF HEARINGS—The Arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies, the Arbitrator shall declare the hearings closed and a minute thereof shall be recorded. If briefs are to be filed, the hearings shall be declared closed as of the final date set by the Arbitrator for the receipt of briefs. If documents are to be filed as provided for in Section 31 and the date set for their receipt is later than that set for the receipt of briefs, the later date shall be the date of closing the hearing. The time limit within which the Arbitrator is required to make his award shall commence to run, in the absence of other agreements by the parties, upon the closing of the hearings.